UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LLOYD MUDIE,<br><br>    Plaintiff,<br><br>v.<br><br>DOLLAR TREE STORES, INC.<br><br>    Defendant. | Civil Action No. |

**COMPLAINT**
**JURY TRIAL REQUESTED**
<u>**INJUNCTIVE RELIEF REQUESTED**</u>

Plaintiff Lloyd Mudie, by and through counsel, hereby complains against Dollar Tree Stores, Inc. as follows:

<u>INTRODUCTION</u>

1. This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.* .

2. Dollar Tree Stores, Inc. violated the ADA and the MHRA by failing to provide Mudie a reasonable accommodation of his disability, by suspending Mudie from employment, and by terminating Mudie's employment because of his disability and/or in retaliation for his request for reasonable accommodation of disability and his opposition to discriminatory treatment.

<u>PARTIES</u>

3. Complainant Lloyd Mudie is a resident of Madison, Somerset County, Maine.

4. Defendant Dollar Tree Stores, Inc. (hereafter "Dollar Tree") is a corporation organized under the laws of the State of Virginia, with headquarters and principal place of business located at 500 Volvo Parkway, Chesapeake, Virginia, registered with the Secretary of State of the State of Maine, and which operates approximately 35 retail stores in the State of Maine, including a store in

Skowhegan, Somerset County, Maine, where it employed Mudie.

## JURISDICTION

5. For calendar years 2015 and 2016, Dollar Tree employed more than 500 employees in each of 20 or more calendar weeks.

6. This Court has subject matter jurisdiction over Mudie's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

7. This Court has personal jurisdiction over Defendant because it does substantial business, including employing Mudie, in the State of Maine.

8. The discriminatory practices alleged herein were committed within the State of Maine, and within Somerset County.

9. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## JURY DEMAND

10. Pursuant to Federal Rule of Civil Procedure 38(b), Mudie hereby demands a trial by jury on issues triable of right by jury.

## PROCEDURAL BACKGROUND

11. On March 21, 2016, Mudie filed a charge of discrimination against Dollar Tree with respect to the allegations herein with the Maine Human Rights Commission ("MHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC").

12. After investigation of Mudie's charge of discrimination, the MHRC investigator issued the Investigator's Report recommending that the MHRC find that there were reasonable grounds to believe Dollar Tree discriminated against Mudie in violation of the Maine Human Rights Act on the basis of disability by failing to provide him with reasonable accommodation of his

disability, and discriminated against him on the basis of disability by subjecting him to less favorable terms and conditions of employment.

13. On October 16, 2017, after hearing argument by the parties and the recommendation of the investigator, the MHRC unanimously determined there were reasonable grounds to believe Dollar Tree discriminated against Mudie in violation of the Maine Human Rights Act on the basis of disability by failing to provide him with reasonable accommodation of his disability, and discriminated against him on the basis of disability by subjecting him to less favorable terms and conditions of employment.

14. On January 16, 2018, the Maine Human Rights Commission notified the parties that Complainant, Mudie, had the right to file a civil action within the later of 2 years after the discriminatory action, or 90 days from the date of January 16, 2018, meaning on or before April 16, 2018.

15. On March 27, 2018, the EEOC issued notice that it adopted the determination of the MHRC, that there were reasonable grounds to believe Dollar Tree discriminated against Mudie on the basis of disability by failing to provide him with reasonable accommodation of his disability, and discriminated against him on the basis of disability by subjecting him to less favorable terms and conditions of employment.

16. On May 10, 2018, the EEOC issued Notice of Right to Sue to Mudie.

17. Mudie has exhausted all administrative remedies for his claims under the ADA and MHRA.

18. At the outset of Mudie's employment in October 2015, Dollar Tree provided him with an arbitration agreement and informed him he was required to sign it electronically.

19. On April 16, 2018, Mudie served a timely demand for arbitration solely on his claims

arising under the MHRA on Dollar Tree.

20.     On April 27, 2018, Dollar Tree provided a response with general denials to Mudie's demand for arbitration, along with a copy of Mudie's demand to its agent, JAMS arbitration service.

21.     Since April 16, 2018, and up to August 7, 2018, Dollar Tree and its arbitration service and agent, JAMS, have failed to issue a Commencement Letter to Mudie, which by JAMS' rules, is the process for commencing arbitration on Mudie's claim under the MHRA.

22.     On June 8, 2018, counsel for Mudie contacted JAMS by e-mail, inquired about the status of the arbitration, and stated that Mudie had received nothing after Dollar Tree's response of April 27, 2018.

23.     Dollar Tree and JAMS have provided Mudie with no response to the inquiry about its lack of action on his demand.

24.     Mudie has suffered prejudice by Dollar Tree's inaction on his claims under the MHRA because the statute of limitations of 90 days for filing a lawsuit has expired on his MHRA claim as of April 16, 2018.

25.     Mudie has suffered prejudice by Dollar Tree's inaction on his claims under the MHRA because he is being denied any opportunity to proceed to vindicate his rights and secure relief.

26.     Dollar Tree is estopped from enforcing the statute of limitations on Mudie's claim under the MHRA because of its own inaction on his demand for arbitration.

27.     Mudie has not demanded and opposes arbitration on his claims arising under the ADA.

28.     By its failure to initiate arbitration on Mudie's demand for over three months, Dollar Tree has waived any right it had to arbitration of Mudie's employment discrimination claims under the MHRA and ADA.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

29. Mudie was hired by Dollar Tree as an assistant store manager for its store in Skowhegan, Maine in October 2015, where he worked until on or about January 28, 2016.

30. At all material times, Dollar Tree employed Mudie within the meaning of the ADA and MHRA.

31. In the fall of 2015, Mudie was experiencing pain from a prior injury, for which he had been under medical treatment since 2010.

32. On December 11, 2015, to alleviate his pain, Mudie asked his physiatrist for a note stating restrictions on his work activities, which statement his physiatrist provided.

33. Mudie's physiatrist's note of December 11, 2015 in relevant part stated: "Please consider the following restrictions to help reduce his low back pain/strain.  1. No lifting more than 20 lbs. 2. No prolonged sitting or standing greater than 1 hour."

34. On January 2, 2016, Mudie provided his doctor's note with the stated restrictions to Janita Lawler, the manager of Dollar Tree's Skowhegan store and said he could not continue the constant fast-paced lifting he was doing.   Lawler said she would forward the note to the district manager and human resources.

35. Lawler said the lifting restriction could be accommodated and questioned Mudie about his diagnosed condition and the meaning of the restriction on prolonged sitting or standing for more than one hour.

36. Lawler asked Mudie to obtain another note from his medical provider on his next appointment.  Mudie agreed to do so, and said that his conditions were not likely to change because he had an ongoing pain condition since he was injured in a fall six years earlier, and that he had undergone three shoulder surgeries because of that fall.

37.     On January 8, 2016, Mudie obtained a second note from his physiatrist, which restated his restrictions: to help reduce his low back pain/strain: 1. no lifting > 20 lbs, 2. no prolonged sitting or standing > 1 o."

38.     Mudie provided his doctor's note of January 8, 2016 to Lawler, who indicated displeasure with the contents being the same as the prior note, asked when Mudie's next doctor's appointment was, and said she would forward the note to human resources.

39.     On January 25, 2016, Mudie had a meeting with Lawler and by telephone with Silvana Gjoni, human resources manager for Dollar Tree.  Gjoni told Mudie there was no issue with the lifting restriction, but asked for more information about the meaning of the restriction on prolonged sitting or standing more than "1 o."  There was confusion about whether it meant 10 minutes or an hour.   Mudie explained that the purpose of that restriction was because it helped alleviate his pain for him to move around.

40.     Mudie agreed to ask his doctor to clarify what the "1 o" meant and the duration of his condition, but was not certain that he would be able to get any answer before his next appointment on February 5, 2016.

41.     Gjoni asked about what Mudie knew about the duration of his pain condition and whether it was an injury from his work at Dollar Tree. Mudie explained it was an old injury, and not from work at Dollar Tree

42.     Gjoni told Mudie that he needed to obtain the doctor's more specific note with clarification on his restrictions.  She told him that he needed to obtain and provide that information by January 27, 2016, and if he did not Dollar Tree would not allow him to continue working.

43.     Despite attempting to do so, Mudie was not able to obtain a clarifying note from his

doctor by January 27, 2016.

44. When Mudie returned to Dollar Tree to work on January 28, 2016, Lawler informed him that he was not allowed to work until he provided another doctor's note. Mudie objected that not allowing him to work was discrimination, but nonetheless Lawler sent him home from work without pay.

45. Dollar Tree suspended Mudie from employment as of January 28, 2016.

46. After making additional unsuccessful requests for another doctor's note, Mudie finally obtained a third note from his physiatrist on February 5, 2016.

47. The doctor's note of February 5, 2016, reiterated the same substantive information as the first note: "Please consider the following restrictions to help reduce his low back pain/strain: 1. No lifting > 20 lbs; 2. No prolonged sitting or standing greater than 1 hour."

48. On or about February 8, Mudie's primary care doctor made a tentative diagnosis that he had an auto-immune disorder which was likely rheumatoid arthritis. That doctor ran tests and referred him to a specialist for evaluation.

49. On February 9, 2016, Mudie provided the doctor's note of February 5, 2016 to Lawler, and told her in addition that his primary care doctor had diagnosed him with what was believed to be rheumatoid arthritis. Mudie gave her some test results relating to that tentative diagnosis of rheumatoid arthritis.

50. Lawler told Mudie that she would forward the note and records to Human Resources and the District Manager, who would contact Mudie.

51. After hearing no response from Dollar Tree for two days, on February 11, 2016, Mudie went to the Dollar Tree store and asked Lawler what the response was regarding his return to work. She said she had not heard. Mudie obtained Gjoni's telephone number, called her, asked

what the status was, and said that he would like to get back to work.

52. Gjoni responded that she had received his doctor's note, it was identical to the last one, and had not end date or change. She said she needed to know how long Mudie's disability was going to last.

53. Mudie responded that his condition was permanent.

54. Gjoni said, "So, it is indefinite," and that she needed to forward the information to associate relations specialists for review.

55. Mudie objected that he had a disability and was protected under the Americans with Disabilities Act, and reiterated that he would like to get back to work.

56. Gjoni responded that she wanted to look at whether Mudie's restriction would allow him to perform the essential functions of the job with or without reasonable accommodation and, she wanted to find out from associate relations, and would get back to him.

57. After hearing nothing from Dollar Tree, on February 12, 2016, Mudie called Gjoni again.

58. Gjoni stated that the doctor's note was insufficient because it did not say anything about Mudie's condition, and was unclear about the restrictions, and if he felt the condition was lifelong, that needed to be stated in the doctor's note, not a verbal communication.

59. Mudie reiterated that rheumatoid arthritis was a lifelong condition.

60. Gjoni asked Mudie to tell her how soon he could get the additional information from his doctor. Mudie said he did not know, and Gjoni said to let her know.

61. On February 22, 2016, Mudie left a telephone message for Gjoni stating that he could not get a more detailed doctor's note until he saw the rheumatology specialist on March 24, 2016.

62. Mudie stated that all that was needed for him to do his job for Dollar Tree to know what his restrictions were, and that it already had three identical notes telling what his restrictions

were: no lifting more than 20 pounds and no sitting or standing for longer than one hour. Mudie objected that the details of what he had and how long it would last were not needed. He asked Gjoni to call him with any questions.

63. Mudie secured an appointment with a rheumatology clinic on March 18, 2016. In that appointment, he underwent tests for arthralgia, and was scheduled for an appointment with the specialist for April 8, 2016.

64. After the appointment with the rheumatology clinic, on or about March 28, 2016, Mudie took the medical records from his appointment to Dollar Tree's Skowhegan store manager, Janita Lawler.

65. After Mudie gave his medical records to Dollar Tree on or about March 28, 2016, he heard nothing from Dollar Tree about his request for accommodation.

66. On November 18, 2016, without notifying Mudie, Dollar Tree changed Mudie's employment status in its computer system to terminated.

67. At all material times, Mudie had a disability within the meaning of the ADA and the MHRA in that his chronic pain condition substantially limited his neurological function as well as his major life activities of lifting, walking and standing.

68. Mudie's chronic pain condition significantly impaired his physical health, and as of 2016 was a condition for which he had been under medical treatment since 2011.

69. Mudie's rheumatoid arthritis was a *per se* disability under the MHRA, 5 M.R.S. § 4553-A (1)(B).

70. At all material times, Mudie had a record of disability, in that he had a history and record of having chronic pain and rheumatoid arthritis.

71. Dollar Tree regarded Mudie as a person with a disability for the purposes of the ADA and

MHRA.

72. At all relevant times, Mudie was qualified to perform the duties of his position of assistant store manager for Dollar Tree and was able to perform all the essential functions of his position with or without reasonable accommodations.

73. Dollar Tree suspended Mudie from employment because of his disability rather than reasonably accommodating his disability, thereby discriminating against him with respect to the terms, conditions and privileges of employment because of his disability, in violation of the ADA and MHRA.

74. Dollar Tree failed to engage in the interactive process with Mudie regarding his requests for accommodation of disability.

75. Dollar Tree suspended Mudie from employment, and terminated his employment because of his disability, record of disability or perceived disability, thereby discriminating against him with respect to the terms, conditions and privileges of employment because of his disability, in violation of the ADA and MHRA.

76. Dollar Tree denied Mudie continued employment because he opposed discrimination on the basis of disability, thereby retaliating and discriminating against him in violation of the ADA and MHRA.

77. Dollar Tree's discriminatory treatment and termination of Mudie's employment was intentional and in violation of his rights under the ADA and MHRA.

78. As a consequence of Dollar Tree's discriminatory actions and termination of his employment, Mudie has suffered damages including but not limited to lost wages, distress, humiliation, inconvenience, injury to reputation, injury to career and other pecuniary and non-pecuniary losses.

79. Mudie has no plain, adequate or complete remedy at law to fully redress the wrongs alleged, and will continue to suffer irreparable injury unless Dollar Tree is enjoined from future violations of his rights.

## COUNT I: DISABILITY DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (ADA)

80. Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

81. Dollar Tree discriminated against Mudie in violation of the ADA when it suspended him from employment and when it refused to allow him to return to employment because of his disability.

82. Dollar Tree discriminated against Mudie in violation of the ADA when it suspended him from employment and when it refused to allow him to return to employment because of his record of a disability.

83. Dollar Tree discriminated against Mudie in violation of the ADA when it suspended him from employment and when it refused to allow him to return to employment because of his perceived disability.

84. Dollar Tree discriminated against Mudie in violation of the ADA when it failed to reasonably accommodate his disability, and instead denied him employment because of disability.

85. As a direct and proximate result of Dollar Tree's violations of the ADA, Mudie suffered damages.

86. Dollar Tree intentionally violated the ADA and Mudie's rights.

## COUNT II: DISABILITY DISCRIMINATION UNDER THE MAINE HUMAN RIGHTS ACT (MHRA)

87. Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

88. Dollar Tree discriminated against Mudie in violation of the MHRA when it suspended him from employment and when it refused to allow him to return to employment because of his disability.

89. Dollar Tree discriminated against Mudie in violation of the MHRA when it suspended him from employment and when it refused to allow him to return to employment because of his record of a disability.

90. Dollar Tree discriminated against Mudie in violation of the MHRA when it suspended him from employment and when it refused to allow him to return to employment because of his perceived disability.

91. Dollar Tree discriminated against Mudie in violation of the MHRA when it failed to reasonably accommodate his disability, and instead denied him employment because of disability.

92. Dollar Tree intentionally violated the MHRA and Mudie's rights.

93. As a direct and proximate result of Dollar Tree's violations of the MHRA, Mudie suffered damages.

COUNT III: RETALIATION UNDER
THE AMERICANS WITH DISABILITIES ACT (ADA)

94. Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

95. Dollar Tree discriminated against Mudie in violation of the ADA when it retaliated against him with denial of accommodation and suspension then termination of employment because he requested accommodation of his disability.

96.     Dollar Tree discriminated against Mudie in violation of the ADA when it retaliated against him with denial of accommodation and suspension and termination of employment because he opposed discriminatory treatment because of disability.

97.     Dollar Tree intentionally violated the ADA and Mudie's rights.

98.     As a direct and proximate result of Dollar Tree's violations of the ADA, Mudie suffered damages.

COUNT IV: RETALIATION UNDER
THE MAINE HUMAN RIGHTS ACT (MHRA)

99.     Plaintiff repeats and re-alleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

100.    Dollar Tree discriminated against Mudie in violation of the MHRA when it retaliated against him with denial of accommodation and suspension then termination of employment because he requested accommodation of his disability.

101.     Dollar Tree discriminated against Mudie in violation of the MHRA when it retaliated against him with denial of accommodation and suspension and termination of employment because he opposed discriminatory treatment because of disability.

102.    Dollar Tree intentionally violated the MHRA and Mudie's rights.

103.    As a direct and proximate result of Dollar Tree's violations of the MHRA, Mudie suffered damages.

## PRAYER FOR RELIEF

Plaintiff Mudie respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of his rights under the ADA and MHRA;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendant to reinstate Plaintiff to employment or award front pay to Plaintiff;

D. Award equitable relief for back pay and benefits;

E. Award compensatory damages under the ADA and MHRA in an amount to be determined at trial;

F. Award punitive damages in an amount to be determined at trial;

G. Award nominal damages;

H. Award attorney's fees, including legal expenses, and costs;

I. Award prejudgment interest;

J. Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability;

K. Require Defendant's CEO to mail a letter to all employees notifying them of the verdict against it and stating that Defendant will not tolerate discrimination in the future;

L. Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

M. Require that Defendant train all management level employees on the protections afforded by the ADA and MHRA;

      N.      Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant failed to provide him with reasonable accommodations and unlawfully terminated him because of disability discrimination and retaliation; and

      O.      Grant to Plaintiff such other and further relief as may be just and proper.

DATE: August 7, 2018                */s/ Lisa J. Butler*_____
                                                Lisa J. Butler, Esq.
                                                Maine Employee Rights Group, P.A.
                                                23 Water Street, Suite 207
                                                Bangor, Maine 04401
                                                lbutler@maineemployeerights.com
                                                Telephone: (207)217-6573

                                                Attorney for Plaintiff